IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KERWINN CROSS, SR. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 17-cv-07654 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| EVARISTO AGUINALDO, M.D., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kerwinn Cross, Sr. was incarcerated at Stateville Correctional Center ("Stateville") when he began to experience extreme pain in his left ear. The next day, Defendant Michelle Dalton, R.N., removed an insect from Cross's ear. According to Cross, he continued to experience pain and hearing loss over the next several months but received minimal treatment from Stateville's medical professionals. As a result, Cross filed this civil rights lawsuit under 42 U.S.C. § 1983, alleging that the following Defendants violated his constitutional rights by acting with deliberate indifference to his serious medical needs: Nurse Dalton; Dr. Evaristo Aguinaldo; La Tanya Ringer Williams, P.A.;[1] Stephanie J. Bakosh, R.N.; Vanessa M. Garcia, R.N.; Wendy A. Dybas; Athena M. Raheem, R.N.; Amy Margaret Rue, L.P.N.; Tiffany Utke, L.P.N.; and David Gomez.[2] Now before the Court is certain Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, in which they claim that Cross failed to exhaust his

---

[1] Cross's Second Amended Complaint lists Williams's first name as "LaTanya." (*See* Dkt. No. 38.) For purposes of the present opinion, however, the Court adopts the spelling used in Defendants' motion, "La Tanya." (*See* Dkt. No. 39.)

[2] The Second Amended Complaint lists Defendant Sherwin Miles solely in her capacity as Acting Warden of Stateville. (*See* Dkt. No. 38.) Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes David Gomez for Miles as Stateville's current warden.

administrative remedies before filing this suit. (Dkt. No. 39.) For the reasons provided below, the motion is granted.

## BACKGROUND

As an initial matter, Cross failed to comply with Local Rule 56.1, which sets forth the manner in which parties are required to present their factual assertions when supporting or opposing a motion for summary judgment. N.D. Ill. L.R. 56.1. Specifically, Local Rule 56.1 requires the party moving for summary judgment to submit a statement of material facts that it contends are undisputed and entitle it to summary judgment. N.D. Ill. L.R. 56.1(a)(3). The statement of facts "shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." N.D. Ill. L.R. 56.1(a). Then, the party opposing summary judgment must file "a concise response to the movant's statement" of facts. N.D. Ill. L.R. 56.1(b)(3). The response should respond to each numbered paragraph in the moving party's statement and where the opposing party disputes a fact, it must include specific references to the affidavits, parts of the record, or other supporting materials relied on to controvert the fact. *Id.* But Cross failed to respond to Defendants' statement of material facts. Cross has thus waived his right to dispute the facts Defendants present. As long as Defendants' facts are adequately supported by the record, the Court views those facts as admitted for purposes of its ruling. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006).

The Court further notes that only Defendants Aguinaldo, Williams, Bakosh, Dybas, Rue, and Utke have actually moved for summary judgment based on Cross's failure to exhaust his administrative remedies. Defendants Dalton, Garcia, Raheem, and Gomez did not join the present motion. As Cross acknowledged in his response brief (*see* Pl.'s Resp. at 2 n.1, Dkt. No. 44),

counsel for the nonmoving Defendants informed the Court at a status hearing that they intended to join the summary judgment motion but that they had not yet done so. Based on that representation, the Court stayed all Defendants' obligations to answer the second amended complaint and set a uniform summary judgment briefing schedule. (*See* June 13, 2019 Min. Entry, Dkt. No. 43.) But Dalton, Garcia, Raheem, and Gomez never moved to join the motion. Nevertheless, pursuant to Federal Rule of Civil Procedure 56(f)(1), the Court may consider summary judgment for nonmoving parties *sua sponte* as long as the opposing party has had notice and the opportunity to present evidence and argument. *See* Fed. R. Civ. P. 56(f)(1); *Williams v. City of Chicago*, 733 F.3d 749, 755 (7th Cir. 2013) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)). Because the summary judgment motion is based on failure to exhaust, an issue that pertains to all Defendants, and because Cross had notice that additional Defendants might join the motion and his response brief addresses the exhaustion issue, the Court considers summary judgment for all Defendants.

    The Prison Litigation Reform Act ("PLRA") provides that a prisoner may not bring any claims concerning prison conditions under § 1983 until he has first exhausted all administrative grievance procedures available to him at his facility. 42 U.S.C. § 1997e(a). The Seventh Circuit takes a "strict compliance approach to exhaustion." *Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011) (quoting *Dole v. Chandler*, 438 F.3d 804, 808 (7th Cir. 2006)). To exhaust his administrative remedies fully, a prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005) (internal citations and quotation marks omitted). At all times relevant to the present motion, Cross was incarcerated at Stateville, an Illinois Department of Corrections ("IDOC") facility. (Second Am. Compl. ("SAC") ¶ 2, Dkt. No. 38; Defs.' Statement of Undisputed Material Facts

("DSOMF") ¶¶ 1–2, Dkt. No. 41) Therefore, the Court will review the IDOC administrative grievance procedure before recounting Cross's efforts to exhaust his remedies.

I.     **IDOC Administrative Grievance Procedure**

The parties agree that title 20, sections 504.800–504.870 of the Illinois Administrative Code govern the administrative grievance procedure for inmates at Stateville. (Mem. in Supp. of Summ. J. at 4, Dkt. No. 40; Mem. in Opp'n to Summ. J. ("Opp'n") at 7–8, Dkt. No. 44). In most cases, an inmate should submit his grievance to his institutional counselor within 60 days of the incident it references. Ill. Admin. Code tit. 20, § 504.810(a) (2003). If that attempt at resolution fails, the regulations direct the inmate to send his written complaint to a grievance officer. *Id.* § 504.810(c). The complaint must provide factual details about the incident, including when and where it happened and the names of the people involved. *Id.* If the prisoner does not know an individual's name, he "must include as much descriptive information about the individual as possible." *Id.* The grievance officer then reports his or her findings to the Chief Administrative Officer ("CAO"), generally the prison warden, "within two months after receipt of the written grievance, when reasonably feasible under the circumstances." *Id.* § 504.830(e). The CAO makes his or her decision based on the grievance officer's findings and advises the inmate of the outcome in writing. *Id.* The prisoner may appeal the CAO's decision to the IDOC within 30 days. *Id.* § 504.850(a). Based on the findings of the IDOC's Administrative Review Board ("ARB"), the IDOC Director shall issue a final determination "within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances." *Id.* § 504.850(b)–(e).

Alternatively, an inmate may submit an emergency grievance directly to the CAO to be handled on an expedited basis. *Id.* § 504.840(a)–(b). But a grievance only constitutes an emergency if "there is a substantial risk of imminent personal injury or other serious or irreparable

4

harm" to the prisoner. *Id.* § 504.840(a). If the CAO determines there is no emergency, he or she informs the prisoner in writing to resubmit the grievance through the standard procedure. *Id.* § 504.840(c).

### II. Cross's Efforts to Exhaust his Administrative Remedies

Between September 2017 and June 2018, Cross submitted five grievances to Stateville administrators complaining about the pain in his ear and the failure by Stateville medical professionals to treat it adequately.

#### A. First Grievance

Cross's complaint alleges that he woke up on September 13, 2017 with an "excruciating pain in his left ear." (SAC ¶ 11.) That morning, Cross went to see Defendant Rue, a nurse at Stateville. (*Id.* ¶ 12.) When Nurse Rue told him there was nothing she could do, Cross filed an emergency grievance that same day ("First Grievance"), complaining about the care provided by the nurse "doing morning meds in E House 7 Gallery." (DSOMF ¶ 15.) The following day, September 14, 2017, Stateville's warden denied Cross's First Grievance as a nonemergency and directed him to submit it in the normal manner. (DSOMF, Ex. 2 at ARB000062, Dkt. No. 41-2.) Instead, Cross appealed the denial of his "emergency" grievance directly to the ARB on October 6, 2017. (DSOMF ¶ 15.) The ARB replied on October 19, 2017, directing Cross to follow the proper administrative procedure by first submitting his complaint to his counselor and a grievance officer. (DSOMF, Ex. 2 at ARB000061.) There is nothing in the record indicating that Cross ever complied by submitting his First Grievance through the nonemergency procedure.

#### B. Second Grievance

Cross has alleged that on September 14, 2017, the day after Cross submitted his First Grievance, Nurse Dalton flushed an insect out of Cross's ear. (SAC ¶ 13.) Cross told Nurse

5

Dalton that he was still in severe pain and that his hearing was impaired, but she refused to provide any further care. (*Id.* ¶ 14.) Later that day, Cross filed another emergency grievance ("Second Grievance"), against "a nurse in the cell house[,] I don't know her name, but she is called Michelle." (DSOMF, Ex. 2 at ARB000040.) Specifically, Cross's Second Grievance complained about the 24-hour delay in obtaining care and Nurse Dalton's refusal to give him antibiotics or other medication for his pain, swelling, and loss of hearing. (*Id.* at ARB000040–41.) The CAO denied the grievance as a nonemergency on September 18, 2017. (DSOMF ¶ 13.) Later that day, Cross resubmitted the Second Grievance in the normal manner. (*Id.*)

On October 23, 2017, while Cross's Second Grievance was still pending before a grievance officer, Cross filed his initial complaint in this case. (*See* Dkt. No. 1.) Then, on January 30, 2018, the grievance officer denied Cross's grievance, noting that he "appear[ed] to be receiving medical care." (DSOMF, Ex. 2 at ARB000039.) Cross filed an appeal of the Second Grievance to the ARB on February 8, 2018. (DSOMF ¶ 13.) The ARB affirmed the grievance officer's denial on March 23, 2018, claiming that the facility had handled the matter appropriately. (DSOMF, Ex. 2 at ARB000038.)

        C.      **Third Grievance**

On December 25, 2017, Cross filed yet another emergency grievance ("Third Grievance"), stating that three days prior, Dr. Aguinaldo had refused to treat the pain in his ear as well as several other health issues Cross was experiencing at the time. (*Id.* at ARB000043.) After a prison administrator denied Cross's Third Grievance as a nonemergency and directed him to file it in the normal manner (*see id.*), Cross submitted the grievance directly to the ARB on January 8, 2018. (DSOMF ¶ 14.) On January 16, 2018, the ARB returned the grievance to Cross, informing him that it would not review the grievance until he obtained responses from both his counselor and a

grievance officer. (DSOMF, Ex. 2 at ARB000042.) Nothing in the record before the Court indicates that Cross ever did so.

### D. Fourth Grievance

Cross alleges that between September 2017 and May 2018, he sought medical care for pain, tinnitus, hearing impairment, and disorientation on at least eleven occasions from Defendants Raheem, Williams, Garcia, Bakosh, Utke, Dybas, Aguinaldo, and Dalton. (SAC ¶¶ 15–16.) Cross submitted another emergency grievance on April 19, 2018 ("Fourth Grievance"), asserting that he had experienced a "throbbing pain" in his ear for approximately six months and that Dr. Williams and Dr. Aguinaldo had both refused to provide treatment. (DSOMF, Ex. 2 at ARB00030–31.) As with Cross's First and Third Grievances, when a CAO denied his Fourth Grievance as a nonemergency, Cross appealed it directly to the ARB. (DSOMF ¶ 12.) The ARB again responded by informing Cross to follow the proper administrative procedures. (*Id.*) Based on the materials presently before the Court, Cross failed to do so.

### E. Fifth Grievance

On June 25, 2018, Cross filed another emergency grievance ("Fifth Grievance"), concerning his appointment with "an individual that was identified to [him] as Dr. O" for refusing to treat his hearing loss and other medical issues. (DSOMF, Ex. 2 at ARB000012.) A CAO denied the Fifth Grievance as a nonemergency, and Cross refiled it in the normal manner on July 10, 2018. (*Id.*; DSOMF ¶ 11.) On September 25, 2018, a prison counselor replied, stating only that Cross's grievance had been passed along to the healthcare unit and grievance office. (DSOMF, Ex. 2 at ARB000012.) Four months later, on January 29, 2019, a grievance officer denied Cross's Fifth Grievance as moot, noting that Cross had received medical care in August 2018 and had a pending appointment with the medical director. (*Id.* at ARB000011.) On February 18, 2019, Cross

7

sent the Fifth Grievance to the ARB, which denied his grievance the following week, on February 26, writing that Cross had access to healthcare and that "[t]reatment is at the discretion of IDOC Physicians." (*Id.* at ARB000010.)

## DISCUSSION

A party is entitled to summary judgment under Federal Rule of Civil Procedure 56 only if it points to materials in the record showing that there is no genuine dispute as to any material fact and that it is entitled to judgment in its favor as a matter of law. Fed. R. Civ. P. 56(a). Defendants have moved for summary judgment on the grounds that Cross did not properly exhaust his administrative remedies as required by the PLRA. The exhaustion requirement is intended to provide prison administrators the opportunity to take corrective action to resolve disputes and reduce the number of cases brought in federal court. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). "[E]xhaustion is a precondition to the filing of a complaint in federal court." *Dixon v. Page*, 291 F.3d 485, 489 (7th Cir. 2002). Thus, the district court must resolve disputes about a plaintiff's failure to exhaust administrative remedies prior to looking at any other issues in the suit. *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 536 (7th Cir. 1999).

Exhaustion is an affirmative defense, and therefore, Defendants bear the burden of proving that Cross did not exhaust his administrative remedies. *Brengettcy*, 423 F.3d at 682. Defendants argue that Cross failed to exhaust in two ways: first, by filing his lawsuit before completing the administrative grievance procedures; and second, by failing to name, identify, or otherwise describe all Defendants in his grievances. The Court addresses each argument in turn.

### I. Whether Cross Followed the Proper Grievance Procedures

Because exhaustion is a precondition to bringing a lawsuit, "it is not enough for a prisoner litigant to meet this requirement after filing." *Mlaska v. Shah*, 428 F. App'x 642, 645 (7th Cir.

2011).³ Cross submitted his initial complaint in this case on October 23, 2017. Thus, the Court limits its exhaustion analysis to the administrative complaints Cross submitted prior to that date—his First and Second Grievances. The Court finds that Defendants have presented sufficient evidence, which Cross has not rebutted, that he failed to exhaust his administrative remedies fully as to those two grievances before filing suit.

Cross submitted his First Grievance as an emergency. And when he was directed to submit it in the normal manner consistent with § 504.840(c), he instead appealed the denial of his "emergency grievance" directly to the ARB. (DSOMF ¶ 15.) The ARB responded on October 19, 2017, letting Cross know that it would not review the grievance until he submitted it as a nonemergency. (DSOMF, Ex.2 at ARB000061.) But there is no evidence that he did so before filing his suit on October 23, 2017. Thus, the undisputed facts establish that Cross failed to exhaust his administrative remedies with respect to the First Grievance.

Cross's Second Grievance proceeded further in the administrative process than the First Grievance. Cross initially submitted the Second Grievance as an emergency; but when the CAO directed him to resubmit it in the normal manner, he did so on September 18, 2017. (DSOMF ¶ 13.) The grievance officer should have provided a response within two months, that is, by November 18, 2017. *See* Ill. Admin. Code tit. 20, § 504.830(e). Yet Cross did not receive the grievance officer's response until January 30, 2018, more than two months late. (DSOMF, Ex. 2 at ARB000039.)

Cross contends that the prison's untimely response to his Second Grievance rendered the administrative process unavailable to him. As support, he points to *Lewis v. Washington*, in which the Seventh Circuit held that courts may consider a prisoner's "administrative remedies exhausted

---

³ *Mlaska* is an unpublished Seventh Circuit order issued after January 1, 2007. Although not precedential, the facts of the underlying case are very analogous to Cross's circumstances, and the Court finds the decision's reasoning persuasive. *See* Fed. R. App. P. 32.1(a); 7th Cir. R. 32.1(b).

when prison officials fail to respond to inmate grievances." 300 F.3d 829, 833 (7th Cir. 2002). In *Lewis*, the Seventh Circuit recognized that administrative remedies are effectively unavailable if officials "exploit the exhaustion requirement through indefinite delay." *Id.* (nonetheless affirming the district court's dismissal because the defendant officials had responded to the relevant grievance, despite ignoring numerous others) (citation omitted). But here, Cross filed his initial complaint in federal court only about one month after submitting the Second Grievance, before the prison's response was even due. The Seventh Circuit has held that a prisoner satisfies the exhaustion requirement when the institution misses its deadline to respond to a grievance and the prisoner waits a reasonable amount of time—generally, at least one month—***after*** the deadline has passed to file his lawsuit. *See Dole*, 438 F.3d at 809–13 (reversing dismissal for failure to exhaust when the prisoner filed his suit more than a year after the ARB's response to his appeal was due and never provided); *Brengettcy*, 423 F.3d 674 (reversing summary judgment based on failure to exhaust when the inmate filed his suit between one and four months after the prison missed its response deadline). That is not what happened here.

While Cross has cited a number of cases for the proposition that Stateville's administrative procedure was unavailable to him because the grievance officer's response was ultimately two months late, in each of those cases, the plaintiffs filed their lawsuits months after they should have received responses to their grievances. *See McNeal v. Cook Cty. Sheriff's Dep't*, 282 F.Supp.2d 865, 867–68 (N.D. Ill. 2003) (declining to dismiss for failure to exhaust when the plaintiff filed his initial complaint at least four months after submitting his grievance and had received no response); *Barrera v. Acting Exec. Dir. of Cook Cty. Dep't of Corr.*, No. 03-cv-1926, 2003 WL 21976753, at *3 (N.D. Ill. Aug. 18, 2003) (declining to dismiss for failure to exhaust when the plaintiff filed his suit at least 20 months after submitting his grievance and received no response);

10

*Smith v. Boyle*, No. 02-cv-2788, 2003 WL 174189, at *3 (N.D. Ill. Jan. 27, 2003) (declining to dismiss for failure to exhaust when the plaintiff filed his lawsuit seven months after submitting his unanswered grievance); *Whitmore v. Hurley*, No. 00-cv-7879, 2002 WL 2012469, at *5 (N.D. Ill. Aug. 30, 2002) (denying summary judgment for failure to exhaust when the plaintiff filed his lawsuit at least one year after submitting his initial grievance, which officials never answered). Cross's actions here are more similar to those of plaintiffs in cases that courts in this District have dismissed for filing prematurely, only days or weeks after the prison's responses were due. *See Jamison v. Franko*, No. 12-cv-0242, 2013 WL 5166626, at *3 (N.D. Ill. Sept. 13, 2013) (granting summary judgment for failure to exhaust when the plaintiff filed his suit less than two weeks after he should have received a response to his grievance); *Gregory v. Santos*, Civil No. 07-669-JPG-CJP, 2010 WL 750047, at *6 (S.D. Ill. Jan. 19, 2010) (dismissing the case for failure to exhaust when the "[p]laintiff gave the ARB only a few days leeway beyond the six-month period provided in Section 504.850(f)").

In short, to exhaust his remedies, Cross had to wait a reasonable time after the grievance officer missed his or her deadline to respond to the Second Grievance before filing suit in federal court. Instead, the undisputed facts establish that Cross brought this action in federal court before the grievance officer's deadline had even arrived. Accordingly, Cross's submission of his Second Grievance failed to properly exhaust his administrative remedies.

Defendants' motion for summary judgment is granted based on Cross's failure to exhaust with respect to his First and Second Grievances.

    **II.  Whether Cross's Grievances Adequately Identified Individual Defendants**

Cross's failure to exhaust all available administrative procedures provides a sufficient basis for the Court's grant of summary judgment in Defendants' favor. But Defendants

Aguinaldo, Williams, Bakosh, Dybas, Rue, and Utke also argue that Cross failed to identify them properly in his grievances. For the sake of completeness, the Court now turns to that issue.

Illinois regulations provide that a prisoner's grievance must provide factual details about the events that formed the basis for his complaint, including the names of each official involved. Ill. Admin. Code tit. 20., § 504.810(b). When a prisoner does not know an official's name, he "must include as much descriptive information about the individual as possible." *Id.* § 504.810(b). This requirement to grieve with particularity went into effect in 2003. *See id.* Under the prior regulations, inmates simply had to provide a brief summary objecting to some wrongdoing. *Maddox*, 655 F.3d at 721. Defendants contend that the change requires Illinois prisoners to exhaust their grievances with respect to each individual defendant before naming them in a lawsuit. They cite *Roberts v. Neal*, 745 F.3d 232 (7th Cir. 2014), in support of their assertion. There, the Seventh Circuit affirmed dismissal in a defendant nurse's favor because the grievance that the plaintiff claimed he had filed against her failed to name or even attempt to describe her. *Id.* at 235–36. Other courts in this District have applied the *Roberts* holding to require plaintiffs to exhaust their claims as to each particular defendant. *Nally v. Obaisi*, No. 17-cv-2902, 2019 WL 6527953, at *2 (N.D. Ill. Dec. 4, 2019) (finding that the plaintiff's grievance did "not exhaust his claims as to individual defendants because he d[id] not name them or provide any identifying information about them."); *Gray v. Ghosh*, No. 11-cv-5513, 2014 WL 3016129, at *4 (N.D. Ill. July 3, 2014) ("Governing precedent holds that to exhaust remedies as to a particular individual, the inmate's grievance must indicate that the individual was the target." (internal quotation marks and alterations omitted)).

But this Court does not read *Roberts* as imposing a requirement on prisoners to file grievances against each individual defendant before filing a lawsuit. The Seventh Circuit in

*Roberts* merely affirmed the lower court's finding that the plaintiff's grievance did not exhaust his remedies where his grievance suffered from the "fatal defect" of failing to comply with § 504.810(b). *See Roberts*, 745 F.3d at 235–36. But the Seventh Circuit has also held that a prisoner's failure to "specifically name the defendants in the grievance was a mere technical defect that had no effect on the process and didn't limit the usefulness of the exhaustion requirement." *See Maddox*, 655 F.3d at 722 (finding that the defendants had waived the argument that the plaintiff had failed to name them with specificity by rejecting his grievances on their merits). The *Maddox* Court recognized that "the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." *Id.* (quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)). Cross was required to exhaust his remedies with respect to each issue raised in his complaint, not to exhaust his claims with respect to each individual Defendant. The Court declines to grant summary judgment on that basis.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. No. 39) is granted and Cross's claims are dismissed without prejudice. *See Fluker v. County of Kankakee*, 741 F.3d 787, 791 (7th Cir. 2013) ("[D]ismissals under § 1997e(a) for failure to exhaust must be without prejudice." (internal citations omitted)). The Clerk is directed to enter judgment in favor of Defendants. Cross is advised that this ruling represents a final decision with respect to the pending action. If he wishes to appeal, he must file a notice of appeal in this Court within 30 days of the entry of judgment. See Fed. R. App. P. 4(a)(1). He need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if he wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). A Rule

13

59(e) motion must be filed within twenty-eight days of the entry of judgment, see Fed. R. Civ. P. 59(e), and suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. See Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. See Fed. R. Civ. P. 60(c)(1). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if filed within twenty-eight days of the entry of judgment. See Fed. R. App. P. 4(a)(4)(A)(vi). Neither the time to file a Rule 59(e) motion nor the time to file a Rule 60(b) motion can be extended. See Fed. R. Civ. P. 6(b)(2). If Cross still would like to pursue his claims on the grounds that he has exhausted his remedies since filing this action, he must bring a new action and either (i) pay the full $402 filing fee, or (ii) submit a new application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a)(2).

ENTERED:

Dated: March 31, 2021

_____
Andrea R. Wood
United States District Judge

14